IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:10-CR-160 |
| v. | ) | |
| | ) | (VARLAN / GUYTON) |
| SANDRA KINCAID, | ) | |
| RANDY KINCAID, | ) | |
| WENDI HENRY, and | ) | |
| DUSTIN MORGAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. §

636(b) for disposition or report and recommendation regarding disposition by the District Court as

may be appropriate. This case is before the Court on the Defendants' pending pretrial motions:

> (1) Motion for Pretrial Hearing on the Existence of a Conspiratorial
> Agreement and the Connection Thereto of Defendant [Doc. 51], filed
> by Defendant Randy Kincaid on June 8, 2011;

> (2) Motion to Compel Government to Provide Defendant with
> Exhibit and Witness List in Advance of Trial [Doc. 52], filed by
> Defendant Randy Kincaid on June 8, 2011;

> (3) Motion for Bill of Particulars [Doc. 54], filed by Defendant
> Sandra Kincaid on June 8, 2011;

> (4) Motion to Compel Production of Exhibit and Witness List Prior
> to Trial [Doc. 56], filed by Defendant Sandra Kincaid on June 8,
> 2011;

> (5) Motion for *Enright* Hearing to Determine Admissibility of
> Hearsay Statements by Indicted and Unindicted Coconspirators [Doc.
> 57], filed by Defendant Sandra Kincaid on June 8, 2011;

1

(6) Motion for a Bill of Particulars [Doc. 67], filed by Defendant Wendi Henry on June 15, 2011;

(7) Motion by the Defendant Dustin Morgan for a Bill of Particulars [Doc. 89], filed on January 6, 2012; and

(8) Motion by Defendant Dustin Morgan for an *Enright* Hearing to Determine Admissibility of Hearsay Statements by Indicted and Unindicted Co-conspirators [Doc. 91], filed on January 6, 2012.

Defendant Randy Kincaid asks [Doc. 60] to join in Defendant Sandra Kincaid's motion for a bill of particulars. Defendant Wendi Henry has moved [Docs. 63 and 65] to join in Mr. and Ms. Kincaid's motions for a pretrial hearing on the existence of the conspiracy [Docs. 51 and 57]. Defendant Henry and Defendant Dustin Morgan have asked [Docs. 64 and 95] to join in the motions of Mr. and Ms. Kincaid to compel the Government to produce witness and exhibit lists [Docs. 52 and 56]. All motions to adopt [**Docs. 60, 63, 64, 65, and 95**] are **GRANTED**.

The Court held a hearing on motions filed by the Kincaids and Defendant Henry on July 18, 2011. Assistant United States Attorneys Alexandra Hui and Frank M. Dale, Jr., appeared on behalf of the Government. Attorneys Gregory P. Isaacs and Andrea Mohr represented Defendant Sandra Kincaid. Assistant Federal Defender Jonathan A. Moffatt appeared on behalf of Defendant Randy Kincaid.[1] Attorney Gerald L. Gulley, Jr., represented Defendant Wendi Henry. All three Defendants were also present. The Court heard the arguments of the parties and took the motions under advisement.

On September 7, 2011, a Superseding Indictment was filed, adding Defendant Dustin Morgan and adding and/or altering the charges against the original Defendants. The Court granted the parties

---

[1]On August 16, 2012, the Court substituted [Doc. 117] Attorney Donny M. Young as Defendant Randy Kincaid's counsel of record, after finding Mr. Moffatt had a conflict of interest.

2

time to file pretrial motions with respect to the new charges. On March 12, 2012, the Court heard argument on Defendant Morgan's pretrial motions. Assistant United States Attorneys Hui, Dale, and Jennifer Kolman appeared on behalf of the Government. Attorney Mark E. Brown represented Defendant Morgan, who was also present. At the conclusion of the hearing, the Court took Defendant Morgan's motions under advisement.

On August 16, 2012, the Court held a hearing on a motion to continue the trial. Assistant United States Attorneys Kolman and Dale appeared on behalf of the Government. Attorney Isaacs represented Mrs. Kincaid. Attorney Donny M. Young appeared on behalf of Mr. Kincaid. Attorney Gulley represented Defendant Henry. Attorney Brown appeared on behalf of Defendant Morgan. All four Defendants were also present. At that hearing, AUSA Kolman stated that the Government was submitting all discovery to the Defendants again to be sure that the discovery was complete. Defendants Sandra and Randy Kincaid moved to reopen the motion deadline in light of the new discovery. The Court granted [Doc. 119] the oral motion to reopen the motion deadline and gave the parties until March 15, 2013, to file any additional motions. No additional pretrial motions were filed.

The Defendants ask the Court to order the Government to provide a bill of particulars, to participate in an Enright hearing in advance of trial, and to produce witness and exhibit lists before trial. The Court will consider the issues raised by the parties.

## I. BACKGROUND

The Defendants are charged [Doc. 77], in Count One, with conspiring with each other and others to distribute and to possess with intent to distribute controlled substances unlawfully out

3

of Breakthrough Pain Therapy Center ("Breakthrough" or the clinic) from May 2009 to December 14, 2010. The Indictment alleges as the manner and means of the conspiracy that Sandra Kincaid, the primary operator of Breakthrough, examined patients and issued prescriptions, although she is not a medical practitioner. [Doc. 77, ¶¶12, 14] Count One states that Wendi Henry, Ms. Kincaid's daughter, worked at the pain clinic and provided patients with false medical documents, which the patients then used to obtain prescriptions for controlled substances. [Doc. 77, ¶¶12, 17] The Indictment states that the patients receiving the false medical documents gave Henry a portion of their narcotic pills, once they filled the prescriptions they obtained at the pain clinic. The Indictment alleges that Randy Kincaid and Dustin Morgan carried firearms at Breakthrough during business hours in order to protect the large cash revenue generated by the business. [Doc. 77, ¶11]

Defendant Randy Kincaid is charged in Count Two and Defendant Dustin Morgan is charged in Count Three with possession of a firearm on December 14, 2010, in furtherance of the drug trafficking alleged in Count One. In Count Four, the Indictment alleges that Mr. and Ms. Kincaid possessed controlled substances with intent to distribute them on December 14, 2010. Count Five charges Mr. Kincaid with possessing a firearm in furtherance of the drug trafficking crime alleged in Count Four. The Defendants Kincaid are also charged with conspiring to commit money laundering from May 2009 to December 14, 2010, in Count 6. Finally, Defendant Randy Kincaid is charged with twenty-one counts of structuring financial transactions in order to avoid federal reporting requirements.

## II. ANALYSIS

The Defendants ask the Court to order the Government to provide a bill of particulars, to

4

participate in a pretrial <u>Enright</u> hearing, and to produce witness and exhibit lists before trial.

## A. Bill of Particulars

The Defendants move [Docs. 54, 67, and 89] the Court to order the Government to file a bill of particulars providing the following information:

(1) The type and amount of controlled substances allegedly manufactured, distributed, and dispensed by each Defendant, the amount of money received therefor, the identity of the individual to whom the controlled substance was distributed, and the date, time, and location of each transaction;

(2) Each Defendants' acts or omissions in furtherance of the alleged conspiracy to distribute controlled substances and/or role in the conspiracy and/or any statements alleged to be made by the Defendant in furtherance of the conspiracy;

(3) Each Defendants' acts or omissions in furtherance of the alleged conspiracy to commit money laundering and/or role in the conspiracy and/or any statements alleged to be made by the Defendant in furtherance of the conspiracy;

(4) The names and addresses of patients of Breakthrough Pain Therapy Center or other persons (a) to whom the Defendants are alleged to have distributed or dispensed controlled substances or provided illegitimate prescriptions, (b) who have false medical records in their files, or (c) from whom the Defendants received money, and the names of all unindicted conspirators;

(5) The origin of all money the Government contends is the fruit of illegal activity for purposes of the forfeiture allegations and/or the money laundering allegations;

(6) The dates on which Defendant Morgan is alleged to have possessed a firearm in furtherance of drug trafficking crimes at Breakthrough and the type(s) of firearm(s) possessed;

(7) The names, addresses, and telephone numbers of all Government informants and witnesses to the crimes alleged in the Superseding

5

Indictment.[2]

The Defendants contend that this information is necessary for them to understand the charges, to prepare to defend against those charges at trial, and to protect against double jeopardy. Specifically, they argue that the complexity of the case and the volume of discovery involved require additional particularization of the charges in order to allow them to prepare for trial.

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landham, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487(1888)); Landham, 251 F.3d at 1079.

Federal Rule of Criminal Procedure 7(f) states that "[t]he court may direct the government

_____

[2]Specifically, the Defendants' seek particularization of the source(s) of the allegations in the Indictment regarding drug addiction, abuse, or overdose by Breakthrough patients; that Breakthrough employees accepted controlled substances in exchange for new prescriptions; and that Breakthrough employees failed to monitor drug-seeking behavior.

6

to file a bill of particulars" and that "[t]he government may amend a bill of particulars subject to such conditions as justice requires." "A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993). The granting of a bill of particulars is within the court's discretion. See id. (holding that the appellate court reviews the denial of a bill of particulars for an abuse of discretion). The level of detail in the indictment can be a basis for denying the motion for a bill of particulars. Id. Additionally, "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." United States v. Paulino, 935 F.2d 739, 750 (6th Cir. 1991), superseded on other gnds by stat., United States v. Caseslorente, 220 F.3d 727 (6th Cir. 2000) (on sentencing issue).

In their three motions, the Defendants seek particularization of seventy items or categories of items relating to the instant charges. The Court has sought to group the Defendants' requests as set out above. Generally, the Defendants seek a bill of particulars identifying (1) their overt acts in furtherance of the conspiracy, (2) the names of all co-conspirators, (3) the dates, times, and locations of the overt acts, (4) the amounts of controlled substances allegedly illegally distributed, (5) the amounts of drug proceeds, and (6) the names and addresses of all patients, informants, and Government witnesses. The Court examines each of these requests in turn.

*(1) Overt Acts*

The Defendants ask the Court to order the Government to provide a bill of particulars stating

7

the date, time, and location of each drug transaction conducted in furtherance of the conspiracy alleged in Count One, along with the type and amount of controlled substance(s) involved. They also seek particularization of each of their roles in furtherance of the alleged conspiracies in Counts One and Six and any overt acts attributed to them in furtherance of the conspiracies. In this regard, the Defendants ask the Government to state the specific instances that Breakthrough employees accepted controlled substances in exchange for new prescriptions, failed to monitor patients' drug-seeking behavior, or acted to aid and abet others in the commission of the alleged crimes. The Defendants also request the Government to identify the existence of and exact wording of any express agreements between each Defendant and the co-conspirators to violate the law.

The Court observes that "a defendant is not entitled to discover all the overt acts that might be proven at trial." Salisbury, 983 F.2d at 1375. With respect to a conspiracy charged under 21 U.S.C. § 846, "an overt act need be neither charged nor proved[.]" United States v. Dempsey, 733 F.2d 392, 396 (6th Cir. 1984) (quoting United States v. Umentum, 547 F.2d 987, 991 (7th Cir. 1976)), see United States v. Shabani, 513 U.S. 10, 11 (1994) (holding that government does not have to prove an overt act in furtherance of the drug conspiracy in order to obtain a conviction under 21 U.S.C. §846). The same is true for a money laundering conspiracy charged under 18 U.S.C. §1956(h). United States v. Bazazpour, 690 F.3d 796, 802 (6th Cir. 2012) (holding that the indictment does not have to charge an overt act in furtherance of a money laundering conspiracy under §1956(h)), see Whitfield v. U.S., 543 U.S. 209, 214 (2005) (holding that a conviction under §1956(h) does not require the government to prove an overt act). Accordingly, because there is no requirement that the Government charge an overt act in a drug or money laundering conspiracy, there is no need to particularize an indictment that fails to do so.

8

Despite the fact that the Government need not allege overt acts with regard to Counts One and Six, both counts contain a section explaining the "manner and means" by which the conspiracies were conducted. Count One contains eleven numbered paragraphs explaining the "Manner and Means" by which the Defendants are alleged to have operated the clinic in order to distribute controlled substances unlawfully. The Manner and Means section of Count One relates two appointments at which an undercover officers submitted false medical documents and obtained prescriptions for narcotics without being examined. Additionally, Count Four alleges that Mr. and Mrs. Kincaid possessed oxycodone with intent to distribute on December 14, 2010, which is within the time frame of the conspiracy. Count Six also contains a "Manner and Means" section describing how the Defendants Kincaid are alleged to have laundered the proceeds of the drug conspiracy by depositing money into safe deposit boxes and bank accounts on certain dates; by purchasing a truck on December 20, 2009, and a Mercedes on March 8, 2010; and by paying the balance on an automobile loan. Thus, the Court finds that some overt acts are related in the Superseding Indictment.

Finally, the Court finds that the Government has provided the Defendants with voluminous discovery in this case. [See Docs. 37 (stating that discovery includes 1,100 patient files), 86, 108 (recounting that discovery consists of 24 compact discs containing over 27,000 documents and recorded conversations), and 119 (noting that Government is producing discovery again to ensure that it is complete)]. The affidavit supporting search warrants for the clinic and the Defendants' residences provides details about how the conspiracy is alleged to have operated and specific instances of the distribution of prescriptions for narcotics based upon false medical documents and

without a physical examination.[3]  Thus, the Court finds that particularization of the overt acts in furtherance of the conspiracies is not necessary to permit the Defendants to prepare for trial.

*(2) Identities of Unindicted Co-conspirators*

The Defendants ask the Court to order the Government to particularize the names of all unindicted co-conspirators to the conspiracies alleged in Counts One and Six.  The Government is not required to furnish in a bill of particulars the names of co-conspirators or other persons present when the Defendants allegedly participated in the conspiracy.  United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991).  In this respect,

> [a] defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction.  As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators. "It is the grand jury's statement of the 'existence of the conspiracy agreement rather than the identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet."

Id. (citations omitted) (quoting United States v. Piccolo, 723 F.2d 1234, 1239 (6th Cir. 1983)).  Thus, the Government is not required to reveal the names of unindicted co-conspirators.  United States v. Crayton, 357 F.3d 560, 568 (6th Cir. 2004).  Nor is it obliged to reveal a list of its witnesses.  See United States v. McCullah, 745 F.2d 350, 353 (6th Cir. 1984) (holding that the Sixth Circuit "has firmly established that defense counsel is not entitled to know in advance of trial who will testify for

---

[3]The master affidavit supporting the search of Breakthrough and the residences of the Kincaids and Defendant Henry is thirty-eight pages long and provides information from confidential informants; an undercover officer posing as a patient at the clinic; interviews with patients, a pharmacist, and other witnesses; surveillance of the clinic; and pharmacy records.

10

the government").

*(3) Dates, Times, and Locations*

The Defendants also seek the dates, times, and locations of all drug transactions and the dates on which Defendant Morgan is alleged to have possessed a firearm in furtherance of the drug trafficking conspiracy. Provision of the time and location of the crime can be an appropriate basis for a bill of particulars. See, e.g., United States v. Sanders, 462 F.2d 122, 123 (6th Cir. 1972) (affirming provision of particular place where possession of unregistered, sawed-off shotgun occurred as well as the city, state, and date of alleged possession). Nevertheless, for alleged drug conspiracies, our appellate court has determined indictments charging an open start date and a specific end date to be sufficient to apprise the defendants of the charges. United States v. Vassar, 346 F. App'x 17, 22 (6th Cir. 2009) (analyzing magistrate judge's denial of a bill of particulars for the date in which the defendant joined the conspiracy and the date and place of each of his acts in furtherance of the conspiracy but order for particularization of the allegation that the conspiracy began "on or before January 1, 2004"), cert. denied, 130 S. Ct. 3343 (2010).

In this case, the Court has already determined [Doc. 122] that the Superseding Indictment alleges the conspiracy in Count One "with reasonable particularity of time[ and] place[.]" United States v. Cruikshank, 92 U.S. 542, 558 (1875). Count One alleges that "beginning in or about May 2009, and continuing through on or about December 14, 2010, within the Eastern District of Tennessee," the Defendants conspired with each other and others to distribute controlled substances. Thus, Count One charges that the conspiracy lasted approximately twenty and one-half months and occurred in this district. The "Manner and Means" section of Count One alleges various activities

11

that occurred at a specific location, the Breakthrough clinic. Count One also lists the following additional dates: (1) The Breakthrough clinic "was formed on or about May 13, 2009" [Doc. 77, ¶10]; (2) Defendant Henry "arranged an appointment" for an undercover officer "[i]n or about April 2010" [Doc. 77, ¶19]; and (3) The undercover officer got prescriptions for controlled substances at "two appointments in April and May 2010" [Doc. 77, ¶20]. Finally, the Court observes that Counts Four and Five allege the distribution of controlled substances and the possession of firearms on December 14, 2010, within the time frame of the alleged conspiracy.

In <u>Vassar</u>, our appellate court examined a challenge to the sufficiency of the dates for a drug distribution conspiracy that was alleged to have run "'[f]rom on or before January 1, 2004, until on or about August 24, 2005, within the Eastern District of Tennessee[.]'" 346 F. App'x at 19. The court observed that while it is insufficient for an indictment to allege "open-ended" dates for both the start and end of a conspiracy, indictments are "sufficient where they fix the end of the conspiracy and provide an approximate start date[.]" <u>Id.</u> at 19-20. Thus, the court held that the indictment in <u>Vassar</u> was sufficient and not unconstitutionally vague. <u>Id.</u> The undersigned finds that the instant Superseding Indictment is arguably more specific than that in <u>Vassar</u> because it provides some additional dates in the "Manner and Means" portion to which the Defendants can connect specific acts allegedly performed in furtherance of the conspiracy. Also, numerous acts are alleged to have occurred at the specific location of the clinic. The Court finds that the allegations of time and place in Count One are sufficient to prevent surprise at trial, to protect against a future double jeopardy violation, and to permit the Defendants to prepare a defense without additional particularization.

*(4) Amounts of Controlled Substances*

The Defendants seek particularization of the type and amount of controlled substances that each of them is alleged to have dispensed. At the motion hearing, counsel for Defendant Kincaid argued that under the federal sentencing guidelines, enhancements to the sentence are driven by the quantity of drugs illegally distributed. The Government argued that there were no quantities of controlled substances to allege in this case that would enhance the punishment for conspiracy to distribute controlled substances above the statutory maximum as required by Apprendi v. New Jersey, 530 U.S. 466 (2000). Nevertheless, the Government stated that the amounts of controlled substances were provided in the discovery given to the Defendants and that the Government would voluntarily provide the information on the quantities of controlled substances involved in this case without a bill of particulars requiring it to do so.

A defendant involved in a drug conspiracy is generally responsible for the drug quantities for which he or she is directly involved and any quantity that is a reasonably foreseeable consequence of the conspiracy. United States v. Cobbs, 233 F. App'x 524, 544 (6th Cir. 2007) (citing United States v. Carver, 470 F.3d 220, 246 (6th Cir. 2006)). In the instant case, the Court finds that the Defendants have access to the specific drug quantities alleged to have been illegally distributed both in the discovery and because the Government has stated that it would provide this information. Accordingly, a bill of particulars for drug quantities is not necessary in this case.

*(5) Drug Proceeds*

The Defendants also request particularization of the amounts and source of all money the Government contends is the fruit of illegal activity for purposes of the forfeiture allegations and/or

13

the money laundering allegations.  At the motion hearing, the Government stated that it has traced $970, 580 in proceeds to the drug conspiracy alleged in Count One and that this amount includes the money seized from the Defendants' safe deposit boxes.

The forfeiture allegations in Count One state that the Defendants shall "jointly and severally" forfeit "[a] personal money judgment . . . in an amount not less than $970,580, representing the amount of money involved in the defendants' offenses in violation of Title 21, United States Code, Sections 846 and 841." [Doc. 77, ¶22 c] The forfeiture allegations in Count Six, the money laundering conspiracy, state that Mr. and Mrs. Kincaid shall forfeit "[a] personal money judgment . . . in an amount not less than $1,244,980 representing the amount of money involved in the defendants' offenses in violation of Title 18, United States Code, Sections 1956 and 1957."  The Court finds that the Superseding Indictment informs the Defendants of the amounts of money that are alleged to be drug proceeds and are attributed to the money laundering conspiracy.

*(6) Names and addresses of Patients, Informants, and Witnesses*

The Defendants ask the Court to order the Government to provide the names and addresses of patients, informants, and witnesses possessing information relating to the allegations in Count One.  As discussed in section C. below, the Defendants are not entitled to a list of the Government's witnesses.  United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir.), cert. denied, 510 U.S. 903 (1993).  A witness list is not an appropriate subject of a bill of particulars but is, instead, an attempt to discover the Government's evidence in the case.  See Salisbury, 983 F.2d at 1375 (holding that a bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial").  Additionally, as the owners and/or operators of the pain

14

clinic, the Defendants know the identities of the employees and patients of the clinic. The Defendants also know the identities of the patients whose files the Government seized pursuant to a search warrant. See Paulino, 935 F.2d at 750 (observing that "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources"). Accordingly, the request for particularization of the names and addresses of patients, informants,[4] and witnesses is denied.

In summary, the Court finds that a bill of particulars listing the Defendants' overt acts in furtherance of the conspiracy; the names of unindicted co-conspirators; the dates, times, and locations of those overt acts; the amounts of controlled substances and drug proceeds involved in the case, and the names and addresses of Government witnesses is not necessary for the Defendants to understand the charges, to prepare to defend against the charges at trial, or to protect against a future double jeopardy violation. The Defendants' motions for a bill of particulars [**Docs. 54, 67, and 89**] are **DENIED**.

### B. Enright Hearing

The Defendants also move [Docs. 51, 57, and 91] the Court for a pretrial hearing to determine the existence of the alleged conspiracy and their membership therein prior to the introduction of statements by any alleged co-conspirators at trial. They allege that the discovery in this case reveals that the Government will likely introduce numerous statements by indicted and unindicted co-conspirators. The Defendants contend that if the Government is permitted to admit

---

[4]The Court also notes that the Government enjoys a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957).

15

the co-conspirator statements at trial subject to later proving the existence of the conspiracy and that they are members, then the risk of error and mistrial will be too great to be cured by a jury instruction. At the hearing on this motion, counsel for Defendant Randy Kincaid argued that the factual allegations in the Indictment do not show that the Defendants conspired with each other. As such, he contended that a pretrial hearing on the existence of the conspiracy is necessary to determine that any alleged co-conspirator statements can be used against Codefendants. Additionally, citing to Federal Rule of Evidence 403, Defendant Sandra Kincaid argues that the probative value of the co-conspirator statements is substantially outweighed by the danger of unfair prejudice and confusion to the jury.

The Government responds that the provisional admission of co-conspirator statements, the method traditionally used in this District, has historically not produced adverse affects. The Government argues that a pretrial hearing would waste judicial resources and permit the Defendants to learn the identities of witnesses and other aspects of the Government's evidence that it is not required to disclose pretrial.

The Federal Rules of Evidence Require that for a statement of a co-conspirator to be admissible non-hearsay, the statement must be made "during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The Sixth Circuit has approved three potential procedures for determining the admissibility of alleged co-conspirator statements: (1) holding a pretrial hearing; (2) requiring at trial that the government present evidence of the conspiracy before presenting the co-conspirator's statement; and (3) allowing the government to present the statement before proving the conspiracy at trial but instructing the jury that the government must prove the conspiracy before it can consider the statement. United States v. Vinson, 606 F.2d 149, 152-53 (6th Cir. 1979) (citing

16

United States v. Enright, 579 F.2d 980 (6th Cir. 1978)). The Defendants are seeking the first option, which is often referred to as an Enright hearing. The Court observes that it is the historical practice in this district to use the third option, which the Court will refer to as the provisional admission option.

Our Court of Appeals for the Sixth Circuit has observed that pretrial Enright hearings have the disadvantage of being "burdensome, time-consuming and uneconomic." Vinson, 606 F.2d at 152 (footnote omitted). Nevertheless, a trial judge, in the exercise of his discretion, may choose to order the proof in this manner as the circumstances warrant." Id. The decision of which of the Vinson options to use falls squarely within the district judge's sound discretion. United States v. Robinson, 390 F.3d 853, 867 (6th Cir. 2004) (stating the decision is "the trial court's prerogative"). In this district, the Court has held that a change from the historical, provisional admission option is not warranted when the proponents of the pretrial hearing offer only "general and vague objections" that "demonstrate no specific prejudice" resulting from the use of the provisional admission option. United States v. Martin, No. 3:07-CR-51, 2008 WL 152900, at *3 (E.D. Tenn. Jan. 14, 2008).

In the present case, the Court finds that the Defendants have failed to show any specific prejudice arising from the provisional admission option. Here, Defendant Randy Kincaid argues that the factual allegations in the Superseding Indictment fail to show that the Defendants conspired together. Despite this absence of any alleged facts relating to the conspiratorial agreement among the Defendants, the Defendants argue that they anticipate that the Government will seek to introduce a large number of co-conspirator statements at trial. Thus, they contend that an Enright hearing will reduce the risk of substantial prejudice and the likelihood of a mistrial. The Court finds that the possibility of a mistrial is a risk already contemplated when the provisional admission option is

17

employed. See Vinson, 606 F.2d at 153 (holding that after provisionally admitting the statements at issue, if the court finds that the government failed to carry its burden of proving the elements of Rule 801(d)(2)(E), it should, on defendant's motion, declare a mistrial unless a curative jury instruction would be sufficient).

Defendant Morgan also argues that none of the statements that the Government will introduce mention him or implicate him in the conspiracy. Thus, he contends that the provisional admission of these co-conspirator statements will cause the jury to assume that he is guilty by association. "[A] jury is presumed capable of sorting out evidence and considering each count and each defendant separately." United States v. Swift, 809 F.2d 320, 323 (6th Cir. 1987). For a defendant to establish substantial prejudice from a "spillover" of evidence, he must show that the jury will not be able to separate and treat as distinct the evidence relating to each count or defendant. United States v. Murphy 836 F.2d 248, 256 (6th Cir. 1988); United States v. Moore, 917 F.2d 215, 220 (6th Cir. 1990) (examining failure to sever defendants). In the present case, the Court finds the Defendants have given no reason that the jury would be unable to distinguish between the roles of the various participants in the alleged conspiracy. Moreover, the trial court can, and no doubt will, instruct the jury to consider the evidence relating to each Defendant separately. Accordingly, the use of the provisional admission option will not cause the jury to consider all Defendants to be implicated by co-conspirator statements if the Government fails to prove that a particular Defendant is a member of the conspiracy.

The Court has considered the Defendants' arguments and finds no reason to depart in this case from the traditional provisional admission approach used in this District. The Court defers to the historical practice of the District Court to permit the Government to present the statement before

18

proving the conspiracy and then instructing the jury that the Government must prove the conspiracy before it can consider the statement. Additionally, whether the probative value of the co-conspirator statements is substantially outweighed by the danger of unfair prejudice and confusion to the jury is a matter for the Defendants to raise and the District Judge to determine in the context of the trial. Accordingly, the Defendants' motions for an Enright hearing [**Docs. 51, 57, and 91**] are **DENIED**.

### C. Witness and Exhibit Lists

Finally, the Defendants ask [Docs. 52 and 56] the Court to order the Government to provide lists of its witnesses and trial exhibits thirty days in advance of trial. The Defendants contend that the Court has discretion to order the production of a witness list. They argue that the production of a list is necessary in this case to protect their rights to a fair and speedy trial, effective assistance of counsel, and due process. The Defendants contend that a witness list is necessary in this case because (1) the proof in this case is complex and voluminous, (2) there are a large number of potential witnesses in this case, and (3) the Defendants pose no threat to the potential witnesses. First, the Defendants assert that the pain clinic involved in this case treated over one thousand patients and that the Government has provided in excess of 30,000 documents in discovery. The Defendants maintain that the Government seized seventy-three (73) patient files, which each contain approximately one hundred (100) documents. They argue that knowledge of which witnesses will be called, both patients and employees of the clinic, will permit counsel to prepare cross-examination on this large pool of potential witnesses and documents. Moreover, the Defendants argue that the Government can have no legitimate concern that they will intimidate its witnesses because they are not charged with, nor do they have any history of, violent crimes. For these same reasons, the

19

Case 3:10-cr-00160-TAV-JEM     Document 136     Filed 08/02/13     Page 19 of 24
PageID #: 633

Defendants also move the Court to order the Government to produce a list of the documents it will seek to introduce at trial.

The Government questions [Doc. 69] whether the Court has discretion to order any discovery not expressly provided by Rule 16 of the Federal Rules of Criminal Procedure. Alternatively, it contends that assuming the Court has the discretion to order a witness or exhibit list, it should do so only in unusual circumstances. The Government contends that this case does not present such unusual circumstances. It states that the number of witnesses in this case will not be especially large, because many of the patients' testimony would be cumulative. At the motion hearing, the Government estimated that it would call approximately twenty witnesses in this case. The Government also asserts that the need to prepare for cross-examination can be raised in every criminal case and, thus, is not a compelling reason to order early disclosure of witnesses. Moreover, the Government contends that although the Defendants do not have a history of violence, the risk of pretrial intimidation of witnesses is always a concern, particularly, as in this case, when the Defendants are not in custody and they face lengthy sentences. Thus, the Government argues that the Defendants' general need to prepare for cross-examination does not outweigh its compelling interest in protecting its witnesses.

With regard to the disclosure of an exhibit list, the Government maintains that although a large number of documents have been provided to the Defendants in discovery, these were provided well in advance of trial and the majority are not admissible at trial. Instead, the Government states that it intends to have an expert discuss the seventy-three patient files and that the identity of this

expert as well as a summary of his testimony will be disclosed to the Defendants before trial.[5]

"Ordinarily, a defendant is not entitled to a list of the names and addresses of the government's witnesses." United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir.), cert. denied, 510 U.S. 903 (1993) (citing Fed. R. Crim. P. 16); see also United States v. Turner, 91 F. App'x 489, 491 (6th Cir. 2004) (holding that a "defendant in a non-capital case . . . is not entitled to know in advance of trial who will testify for the government"). This rule is tempered by the government's obligation under Brady v. Maryland, 373 U.S. 83, 87 (1963), to provide the defendant with information that is favorable to his defense and material to either guilt or punishment. The government "acts at its own peril" if it fails to provide Brady materials in a timely fashion. United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988).

The case law regarding whether the Court has the discretion to order the Government to produce a witness list even though Rule 16 does not require it appears to conflict. Compare United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir. 1980) (holding that the district court has the discretion to order the prosecution to produce a witness list), with Presser, 844 F.2d at 1285 (holding that Rule 16 provides no authority for compelling the government to disclose Brady material or any other evidence not required by the rule pretrial). Even in holding that Rule 16 does not allow for discovery beyond its scope, our appellate court has noted that "a trial court may have some inherent power to enter specific orders compelling the disclosure of specific evidence when justice requires it," although it may not disregard specific statutory provisions such as the Jencks Act. Id. at 1285

---

[5]The Court notes that on July 30, 2013, the Government filed a Notice that it would be presenting the expert testimony of Thomas Miller, M.D., who may testify "regarding the legitimacy of Breakthrough Pain Therapy Center as a medical pain management practice" based in part upon his review of patient files obtained from the clinic by a search warrant. [Doc. 133, pp.2-3]

n.12.

Assuming that the Court has discretion to order the Government to produce a list of its witnesses, the Court finds that justice does not require it in the instant case. Certainly, the instant Defendants would be better prepared to meet the Government's accusations if they had more information about the facts, the witnesses, and the exhibits that they may be facing. This fact does not distinguish the Defendants from any other criminal defendant. The Defendants point to the large amount of documentary discovery and the large pool of potential witnesses as reasons for requiring a witness and exhibit list in this case. They liken the instant case to that in United States v. Moss, No. 02-20165-D/P (W.D. Tenn. June 15, 2005) (Order) [Doc. 52, Exh. 1; Doc. 56, Exh. 2], arguing that the Court should similarly find this to be an appropriate case for the disclosure of witness and exhibit lists.

The Court declines to find that justice requires the pretrial disclosure of the Government's witnesses and exhibits based upon the volume of potential evidence and witnesses. In Moss, the pretrial motions and pleadings, as well as the Order cited by the Defendants, describe a multitude of interrelated discovery issues. The discovery in Moss included 167 banker boxes of papers, data from twenty desktop computers and seven mainframe computers, and material reportedly in the possession of two foreign governments. Moss, No. 02-20165-D/P, 2005 WL 1972583, *1 (W.D. Tenn. Aug. 16, 2005) [Doc. 56, Exh. 1, pp.1-2]. In this case, the discovery, though voluminous, is much less than that in Moss. Moreover, it appears that the Defendants received the bulk of the discovery in this case on December 29, 2010 [see Doc. 28, p.1], and the Government provided all discovery to the Defendants a second time in August 2012 [see Doc. 119, p.2] to be sure that the Defendants had received everything. In contrast, the parties in Moss were litigating the provision

22

of discovery within three months of the trial. [Doc. 56, Exh. 1, pp. 1-3, & Exh. 2] Although the discovery in the instant case is voluminous, the Court has continued the trial over two and one-half years[6] [Docs. 37, 86, 119, and 135] in part in order to give the Defendants time to review discovery and to prepare the case for trial.  With regard to potential witnesses, the Defendants know that the identities of seventy-three patients whose files were seized by the Government during the search of the pain clinic, and they know the persons who were employed at the clinic during the relevant time period.  The documents within the seventy-three patient files are a distinct, if still large, subset of the overall discovery.  Finally, the Court has ordered [Docs. 119 and 135] the Government to disclose its expert witnesses three months in advance of trial.

The Defendants also argue that unlike in other cases before this Court, disclosure of the Government's witnesses in the instant case would not create the risk of danger or intimidation to the witnesses.  The Court agrees that the Defendants do not have criminal histories involving violent crimes.  However, the instant charges against Defendants Randy Kincaid and Dustin Morgan involve the carrying of firearms in furtherance of drug trafficking crimes.  Moreover, the former employees of clinic are known to the Defendants and arguably more likely to feel intimidated by the Defendants' knowledge of their intent to testify against the Defendants.  Accordingly, the Court finds that the lowered risk of intimidation in this case is not sufficient to require the pretrial disclosure of the Government's witnesses.

With regard to a list of exhibits, the Court finds that the Defendants have failed to demonstrate a specialized need for advanced notice of the Government's exhibits that would justify this Court ordering discovery beyond that otherwise provided in the Order on Discovery and

---

[6]The original trial date was February 22, 2011.

Scheduling [Doc. 18]. The Defendants' motions to compel disclosure of the Government's witnesses and exhibits before trial **[Docs. 52 and 56]** are **DENIED**.

## III.  CONCLUSION

For the reasons given above, it is **ORDERED**:

(1) The Defendants' motions to adopt [**Docs. 60, 63, 64, 65, and 95**] the motions of their codefendants are **GRANTED**;

(2) The Defendants' motions for a bill of particulars [**Docs. 54, 67, and 89**] are **DENIED**;

(3) The Defendants' motions for an <u>Enright</u> hearing [**Docs. 51, 57, and 91**] are **DENIED**; and

(4) The Defendants' motions to compel the Government to disclose its witnesses and exhibits thirty days before trial [**Docs. 52 and 56**] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

_____  s/ H. Bruce Guyton_____
United States Magistrate Judge

24