UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:10-CR-160 |
| | ) | (VARLAN/GUYTON) |
| SANDRA KINCAID, RANDY KINCAID, WENDI HENRY, and DUSTIN MORGAN, | ) | |
| Defendants. | ) | |

## ORDER

This criminal action is before the Court on the motions in limine filed by defendants Dustin Morgan ("Morgan"), Sandra Kincaid ("Ms. Kincaid"), and Wendi Henry ("Henry") [Docs. 147–153]. The government responded in opposition to all of these motions [Doc. 164]. This order sets forth rulings on each motion.

**I.  Motion in Limine Standard**

"Motions in limine allow the Court to rule on evidentiary issues prior to trial in order to avoid delay and focus pertinent issues for the jury's consideration." *United States v. Amir*, No. 1:10-CR-439, 2011 WL 3862013, at *1 (N.D. Ohio Aug. 31, 2011) (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). Evidence should be excluded on a motion in limine only if it is clearly inadmissible. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). Accordingly, "[i]f the court is unable to determine whether or

not certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context." *Amir*, 2011 WL 3862013, at *1 (citing *Ind. Ins. Co.*, 326 F. Supp. 2d at 846). "A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citation omitted).

## II. Motions in Limine

### A. Motion in Limine to Exclude Firearms Obtained by Government Agents from Defendant Dustin Morgan's Residence [Doc. 147]

Morgan seeks to preclude any argument or evidence regarding firearms seized from his residence on December 14, 2010, including specifically the nine millimeter pistol with a loaded magazine seized from under Morgan's mattress. Morgan is charged with knowingly possessing a firearm in furtherance of a drug trafficking crime in count three of the superseding indictment. Yet, Morgan states that he does not believe that the seized firearm is the one referred to in the superseding indictment. Morgan also contends that because the nine millimeter pistol was found in his residence, rather than at Breakthrough Pain Clinic, the site of the alleged drug trafficking conspiracy, and because no controlled substances were found in his residence during the same search, the seized firearm is irrelevant to the charges against Morgan and, even if deemed relevant, has minimal probative value that is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. As Morgan puts it, the issue is not

whether Morgan possessed a firearm in his home, but whether he knowingly possessed a firearm at the Breakthrough Pain Clinic in furtherance of a drug trafficking crime. Finally, Morgan claims that introduction of this evidence would leave him susceptible to a second firearms charge not included in the indictment.

The government responds that it will offer testimony at trial from witnesses who saw Morgan with a firearm at Breakthrough Pain Clinic and that the government merely has to offer sufficient evidence for a reasonable jury to infer that Morgan carried a firearm in furtherance of a drug trafficking crime. To this end, the government submits that the fact that firearms were recovered in Morgan's desk at work and from underneath his mattress at home is relevant to its prosecution, as this evidence makes it more probable that Morgan possessed a firearm in furtherance of a drug trafficking crime. Moreover, the government counters that this evidence does not expose Morgan to an unindicted weapons charge. Finally, according to the government, the fact that no controlled substances were found at Morgan's residence is irrelevant to whether Breakthrough Pain Clinic and Morgan were part of a drug conspiracy.

Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Morgan is charged with possessing a firearm in furtherance of a drug trafficking crime, and the fact that law enforcement seized a loaded firearm from his residence makes it more probable that he committed the crime of which he is accused.

3

In addition, under Federal Rule of Evidence 403, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403; *see U.S. v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001) (holding that Rule 403 is an extraordinary remedy and carries a strong presumption in favor of admissibility); *In re Air Crash Disaster*, 86 F.3d 498, 538 (6th Cir. 1996) (holding that the "rule only applies when it is likely that the jury will be moved by a piece of evidence in a manner that is somehow unfair or inappropriate"). Morgan will have the opportunity through cross-examination of government witnesses and the submission of his own proof to distinguish his possession of a firearm in his residence from the crime he is charged with committing. Accordingly, Morgan's motion [Doc. 147] is **DENIED**.

### B. Motion in Limine by Defendant Dustin Morgan to Exclude the Term "Pill Mill" [Doc. 148]

Morgan also moves to preclude the government or any of its witnesses from using the term "pill mill," arguing that this term is unduly suggestive of illicit activity and unduly prejudicial to Morgan because it carries a negative connotation. He contends that use of a prejudicial term would allow the government to sidestep its burden of proof. In support, Morgan cites *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997), which held that district courts abuse their discretion by allowing witnesses to define legal terms, especially ones with considerable "legal baggage." In addition, Morgan argues that the government will use this term in conjunction with offering evidence as to the

4

Case 3:10-cr-00160-TAV-JEM Document 169 Filed 10/11/13 Page 4 of 14
PageID #: 908

characteristics of typical illegal pain clinics and, as Morgan puts it, "[e]lements of a crime should be matched with proof, not stereotypes" [Doc. 148].

The government responds that no term or label can reasonably be expected to allow the government to sidestep its burden of proving illegal activity and that this particular term is a "time-honored term" for referring to illicit pain clinics that has been used by courts in the past [Doc. 164 (citing *United States v. Leal*, 75 F.3d 219, 223 (6th Cir. 1996), *abrogated by United States v. Kennedy*, 107 F. App'x 518 (6th Cir. 2004); *United States v. Simons*, No. 09-10032-01, 2012 WL 1473800, at *1 (D. Kan. Apr. 27, 2012))]. Additionally, the government contends, other courts have denied similar motions to that made by Morgan here.

The Court finds that the fact that a term has a negative connotation does not mean that it violates Rule 403, and Morgan does not cite to any case that states otherwise. The term "pill mill" is not a legal conclusion, as Morgan argues, but is a phrase used in law enforcement and in the media to describe the activity that has been attributed to Morgan and his alleged co-conspirators. *See United States v. Caroni*, No. 3:10CR101/MCR, 2011 WL 4102343, at *4 (N.D. Fla. Sept. 13, 2011) ( "[T]he phrase 'pill mill' is not a legal term and, instead, is commonly used by laypeople to describe certain types of pain management clinics[,]" and there is "nothing inappropriate or unduly prejudicial about the phrase 'pill mill.'"); *United States v. Hazelwood*, No. 1:10-CR-150, 2011 WL 2565294, at *24 (N.D. Ohio June 27, 2011) ("The use of the phrase 'pill mill' is not much different than other words like 'drug organization,' 'drug house,' or 'stash house.'

5

They seek to characterize the nature of the allegedly illegal operation."). Moreover, the term "pill mill" is merely a shorthand way of characterizing the nature of the allegedly illegal operation. Further, any prejudicial effect by the use of this term at trial is mitigated by the probative value of having witnesses that are able to accurately describe the activity of the instant defendants based on any investigation or personal experience as patients. Consequently, the Court **DENIES** Morgan's motion [Doc. 148] to exclude the term "pill mill."

> **C.    Motion in Limine by the Defendant Dustin Morgan to Preclude Introduction of Evidence Seized from His Residence, Evidence Seized from a Safe Deposit Box at Alcoa-Tenn. Federal Credit Union and Testimony Regarding His Banking Activities [Doc. 149]**

When Morgan's residence was searched, law enforcement agents found: (1) a Breakthrough Pain Clinic prescription to Morgan's wife; (2) prescription bottles, a receipt, and miscellaneous papers; and (3) an undetermined amount of United States currency under Morgan's mattress and in a fire safe. In addition, law enforcement agents searched a safe deposit box in the name of Morgan and his wife and seized $23,000 in United States currency. Morgan submits that he expects the government to offer testimony from employees of the bank regarding his access to this safe deposit box and banking activities. In support of his motion to exclude this evidence seized from his bedroom and safe deposit box, Morgan states that the evidence is irrelevant and presents a danger of unfair prejudice, confusing the issues, or misleading the jury because he is

6

charged with conspiracy to distribute controlled substances and possession of a weapon in furtherance of such criminal activity, not money laundering.

The government argues that this evidence is relevant because the motive behind the alleged conspiracy was generating large sums of cash revenues, and thus the seized currency is relevant to the government's case because it makes more probable the existence of a conspiracy and the illicit nature of such a conspiracy. Similarly, the prescription bottles from Breakthrough Pain Clinic and other items make more probable Morgan's knowing involvement in the conspiracy.

The Court agrees with the government and finds that this evidence is relevant under Federal Rule of Evidence 401. In addition, the Court finds that Morgan has not shown that the probative value of this evidence in indicating his involvement in the alleged conspiracy is substantially outweighed by the danger of unfair prejudice or the danger that such evidence will confuse the issues or mislead the jury. Fed. R. Evid. 403. Because this evidence is not clearly inadmissible at this time, Morgan's motion [Doc. 149] is **DENIED**.

### D. Motion in Limine to Preclude Evidence of Alleged Threats Made by Defendant Dustin Morgan [Doc. 150]

Morgan moves to exclude evidence of alleged threats made against Tonya Overholt, a former employee of Breakthrough Pain Clinic. In August 2011, Overholt stated that she had been threatened by someone who sounded "a lot like Wendi Henry's brother," which is Morgan [Doc. 150]. This alleged threat specifically pertained to

7

Case 3:10-cr-00160-TAV-JEM Document 169 Filed 10/11/13 Page 7 of 14
PageID #: 911

Overholt acting adversely to the speaker's family and warned that she would end up in a ditch as a result. Morgan contends that this evidence is irrelevant under Rule 401, unduly prejudicial and confusing under Rule 403, and inadmissible hearsay because he claims it will be offered for the truth of the matter asserted and does not fit within a hearsay exception.

The government counters that the evidence is relevant because the family reference by the caller implicates Morgan's co-conspirators and tends to indicate the illicit nature of Breakthrough Pain Clinic. As this argument goes, death threats are not usually made on behalf of legal medical facilities. Moreover, the government argues that the threat is not hearsay because it is not being offered to prove the truth of the matter asserted—that Overholt would end up in a ditch—but is instead relevant simply because it was made, among other reasons.[1] Further, the government submits that while making a death threat may be prejudicial to one's defense, such prejudice is not unfair and can be mitigated through cross-examination that highlights Overholt's uncertainty as to the speaker's identity and the apparent lack of adverse consequences to Overholt as a result of the alleged threat.

First, regarding whether this statement was actually made by Morgan, assuming the proper foundation is laid, Overholt is qualified to opine on this point at trial. Fed. R. Evid. 901(b)(5). Also, Overholt does not have to testify that she is absolutely certain that

---

[1] The government also argues that it is not hearsay because it is a statement made by a party opponent and constitutes a verbal act.

8

it was Morgan's voice—to authenticate or identify a piece of evidence, the offering party must merely "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

As to the objections pursuant to Rules 401 and 403, the evidence could be relevant if offered for certain purposes and cannot necessarily be said to be unfairly prejudicial or confusing in all contexts. A ruling on the issues this evidence presents under Rules 401 and 403, therefore, is more appropriately decided in the context in which the evidence is offered at trial.[2]

Finally, if, as Morgan suspects, this evidence is offered by the government at trial as an alleged threat made by Morgan, it may be admissible as a statement made by a party opponent, which would make it nonhearsay. Fed. R. Evid. 801(d)(2).[3] Moreover, as the government states, there may be contexts in which this alleged threat is not offered for the truth of the matter asserted and is therefore not hearsay. Fed. R. Evid. 801(c)(2). However, as with objections pursuant to Rules 401 and 403, hearsay rulings are highly dependent on the context in which the evidence is offered and the purpose for which it is offered.

---

[2] *Amir*, 2011 WL 3862013, at *1 (citing *Ind. Ins. Co.*, 326 F. Supp. 2d at 846).

[3] Notably, it is irrelevant whether Morgan was indicted or charged at the time he allegedly made the statement for purposes of whether it qualifies as an opposing party's statement. *See* Fed. R. Evid. 801(d)(2) (holding that such a statement must merely be made by the party and offered against that party).

9

Accordingly, the Court **DENIES** this motion [Doc. 150] with leave to renew it during the course of the trial.

### E. Motion in Limine Regarding Testimony of Special Agent Stanley Neil Jones [Doc. 151]

Pursuant to 28 U.S.C. § 636(b), this motion [Doc. 151] was referred to United States Magistrate Judge H. Bruce Guyton for his consideration and determination [Doc. 165].

### F. Motion in Limine to Suppress References to Tamral Guzman, Maryville Pain Clinic, LLC, and/or References to *United States v. Tamral Guzman* [Doc. 152]

Ms. Kincaid and Henry argue that any references to the prosecution of Tamral Guzman ("Guzman"), Maryville Pain Management, LLC, and/or *United States v. Tamral Guzman*[4] would be irrelevant and unfairly prejudicial. More specifically, Ms. Kincaid and Henry submit that it is irrelevant that Ms. Kincaid was a longtime friend of Guzman's mother. Moreover, they contend that any arguable relevance of these items is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.

---

[4] A jury found Guzman guilty of 57 counts alleging conspiracy to distribute and possess with intent to distribute controlled substances and various money laundering charges in connection with Maryville Pain Management. The case, number 3:10-CR-161-1, was tried in this Court, and the verdict was rendered on October 4, 2012.

10

The government agrees that Ms. Kincaid's friendship with Guzman's mother has no bearing on this case. Yet, the government points out that what may be relevant is that Ms. Kincaid and Henry worked for Guzman at Maryville Pain Management, which is allegedly where they learned how to operate a pain clinic. Furthermore, the government contends that Ms. Kincaid opened Breakthrough Pain Clinic to compete with Guzman. The government avers that while it will not attempt to hold the instant defendants accountable for Guzman's actions, it should not be wholly precluded from referring to the fact that Ms. Kincaid and Henry started in the pain clinic business at Maryville Pain Management, and some of their customers moved with them from Maryville Pain Management to Breakthrough Pain Clinic.

Without knowing the context in which this evidence is offered, the Court cannot conclude whether it is admissible or inadmissible.[5]  Thus, the Court will **DENY** this motion [Doc. 152] with leave to renew it during the course of trial. *Amir*, 2011 WL 3862013, at *1 (citing *Ind. Ins. Co.*, 326 F. Supp. 2d at 846).

### G. Motion in Limine to Suppress Photographs of Prescription Bottles and References to Defendant Randy Kincaid's Sexual Activity [Doc. 153]

Ms. Kincaid moves the Court to exclude photographs of prescription pill bottles found at her residence and evidence or testimony that Randy Kincaid ("Mr. Kincaid"), her husband and co-defendant, engaged in extramarital sexual activity with individuals at

---

[5] For example, as the government admits, the Guzman conspiracy cannot be used to establish guilt on the part of the instant defendants. Yet, the fact that Ms. Kincaid and Henry allegedly took what they learned while working at Maryville Pain Management and started their own pain clinic may be relevant, depending on the context in which such evidence is offered.

11

Breakthrough Pain Clinic. This evidence, according to Ms. Kincaid, is irrelevant to the allegations in the indictment and presents a danger of unfair prejudice, confusing the issues, or misleading the jury that substantially outweighs any probative value it may have.

The government responds that this evidence is relevant because the numerous prescription pill bottles found throughout Ms. Kincaid's residence either contained or had contained Schedule II controlled medications and a number of the bottles indicated that they had been prescribed for individuals other than Mr. or Ms. Kincaid. According to the government, such evidence is consistent with its allegations of illegal possession and distribution of controlled substances. In addition, the government contends that the evidence of Mr. Kincaid's sexual activity is relevant because the government will offer evidence at trial that Mr. Kincaid received sexual favors from drug addicts at Breakthrough Pain Clinic in exchange for oxycodone.

The Court finds that the photographs of prescription pill bottles, some of which were for individuals other than Mr. and Mrs. Kincaid and most of which were for Schedule II controlled substances, are relevant in terms of making more probable the fact that Ms. Kincaid was engaged in the illegal possession and distribution of controlled substances. Moreover, Mr. Kincaid's alleged sexual activity in exchange for controlled substances makes more probable the fact that Breakthrough Pain Clinic was an illicit drug distribution operation. Finally, though this evidence might present a danger of unfair prejudice, confusing the issues, or misleading the jury if offered in certain

12

contexts, the Court cannot say that in all contexts the prejudicial effect of this evidence would substantially outweigh its probative value under Rule 403, and thus the Court **DENIES** this motion [Doc. 153].

## III. Conclusion

For the reasons explained herein, the Court hereby:

1. **DENIES** the Motion in Limine to Exclude Firearms Obtained by Government Agents from Defendant Dustin Morgan's Residence [Doc. 147];

2. **DENIES** the Motion in Limine by Defendant Dustin Morgan to Exclude the Term "Pill Mill" [Doc. 148];

3. **DENIES** the Motion in Limine by the Defendant Dustin Morgan to Preclude Introduction of Evidence Seized from His Residence, Evidence Seized from a Safe Deposit Box at Alcoa-Tenn. Federal Credit Union and Testimony Regarding His Banking Activities [Doc. 149];

4. **DENIES** with leave to renew during the course of trial the Motion in Limine to Preclude Evidence of Alleged Threats Made by Defendant Dustin Morgan [Doc. 150];

5. **DENIES** with leave to renew during the course of trial the Motion in Limine to Suppress References to Tamral Guzman, Maryville Pain Clinic, LLC, and/or References to *United States v. Tamral Guzman* [Doc. 152]; and

6. **DENIES** the Motion in Limine to Suppress Photographs of Prescription Bottles and References to Defendant Randy Kincaid's Sexual Activity [Doc. 153].

The Motion in Limine Regarding Testimony of Special Agent Stanley Neil Jones [Doc. 151] has been referred to United States Magistrate Judge H. Bruce Guyton for his consideration and determination [Doc. 165].

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE